UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

LANNIE FENTRESS
and DARON FENTRESS Plaintiffs

v. Case No. 4:24-cv-124-RGJ-HBB

CITY OF LEITCHFIELD, *et al.* Defendants

* * * * *

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court on the motions for partial judgment on the pleadings filed by Defendants Justin Cockerel ("Cockerel") and Dennis I. Newton ("Newton") [DE 44], and by Defendants Grayson County Sheriff Department ("GCSD"), Grayson County, and Thomas Lane (collectively "Grayson County Defendants") [DE 46]. Plaintiffs Lannie Fentress ("Lannie") and Daron Fentress ("Daron") (collectively "Plaintiffs") did not respond. Additionally, the Parties jointly move to extend deadlines and continue the trial date, currently set for November 9, 2026. [DE 72]. These matters are ripe. For the following reasons, the motions for partial judgment on the pleadings [DE 44; DE 46] are **GRANTED in part and DENIED in part** and the joint motion to extend deadlines and continue the trial date [DE 72] is **GRANTED**.

## I. BACKGROUND

This case arises from an altercation between Plaintiffs Lannie and Daron, who are father and son, and several law enforcement officers. Leitchfield is the county seat of Defendant Grayson County, Kentucky. [*See* DE 1 at 4]. At all relevant times, Defendants Newton, Cockerel, Jennings, and Jupin were officers of the Leitchfield Police Department ("LPD"), a previously dismissed entity. [*Id.* at 4–5]. Defendant City of Litchfield is the

municipal entity with control over LPD. [*Id.*]. Defendant Thomas Lane ("Lane") was a deputy sheriff with Defendant GCSD. [*Id.* at 5].

According to the complaint, on or about June 9, 2024, Plaintiffs were at home "when they heard a loud noise, like an explosion," and smelled smoke. [*Id.* at 6]. A fire ignited in the basement. [*Id.*]. Lannie instructed his wife to call 911, retrieved a garden hose, and began attempting to extinguish the fire alongside Daron. [*Id.*]. Officers, including the individual Defendants, responded to the scene. [*Id.* at 6–7]. Lannie exited the home and informed the officers that a battery had exploded. [*Id.* at 6]. Although the officers had fire extinguishers, the complaint alleges that they did not attempt to extinguish the fire. [*Id.*]. When Lannie attempted to reenter the home to continue combatting the fire, Newton grabbed his arm, threatened him with arrest, and threatened to hit Daron with a fire extinguisher. [*Id.* at 6–7]. Newton and Cockerel tased both of Plaintiffs, beat Lannie, and restrained him. [*Id.* at 7]. Lane also deployed his taser against Lannie. [*Id.*].

Ultimately, both Plaintiffs were handcuffed and arrested. [*Id.*]. They posted bond and were released. [*Id.*]. Later, a grand jury returned no true bill for Lannie, and the charges against him were dismissed. [*Id.* at 7–8]. Newton was charged for his role in the altercation, and the grand jury returned a misdemeanor indictment against him. [*Id.* at 7].

Plaintiffs claim they "never . . . posed a threat to anyone in the vicinity of the incident" and that officers "never had a justifiable legal basis to detain . . . or remove them from the property." [*Id.* at 7]. More broadly, they allege that LPD and GCSD failed to adequately train their respective police officers and deputy sheriffs regarding the use of force "when a suspect is posing no threat," resulting in a "pattern" of unreasonable force.

[*Id.* at 8]. They further allege that LPD and GCSD "have acted with deliberate indifference" towards that pattern. [*Id.* at 8–9].

Plaintiffs' Complaint asserts 10 causes of action: federal rights violations under 42 U.S.C. § 1983; assault and battery; negligence; false arrest and imprisonment; malicious prosecution; abuse of process; two counts of professional malfeasance; and two counts of negligent hiring, retention, supervision, and training. [*Id.* at 9–16]. The § 1983 claim asserts violations of both the Fourth Amendment and the Eighth Amendment. [*Id.* at 9–10]. As relevant here, the final two counts are pleaded against Grayson County and GCSD, respectively. [*Id.* at 15–16]. All other claims are pleaded "against all defendants (in all capacities)." [*Id.* at 9–15]. Plaintiffs seeks both compensatory and punitive damages. [*Id.* at 16].[1]

Discovery regarding Newton was stayed pending resolution of the state court criminal charges arising from the incident described in the complaint. [DE 28]. Accordingly, the magistrate judge granted Newton's motion for extension of time to file dispositive motions and to extend discovery. [DE 67]. "The deadline for Newton to file dispositive motions will be 30 days following the conclusion of the criminal trial." [Id.].

However, the Parties notified the Court that "Defendant Dennis Newton's criminal trial concluded on August 27, 2026." [DE 72 at 514]. Thereafter, pursuant to the magistrate's order, a 30-day discovery window began tolling and the deadline for Newton to file is now Monday, September 28, 2026. *See* Fed. R. Civ. P. 6(a)(1).

[1] On May 29, 2025, this Court granted a partial dismissal of the claims asserted against Defendants Brian Jennings and Tamara Jupin in their official capacities, as well as Plaintiffs' §1983 claims to the extent they relied on the Eight Amendment, and Plaintiffs' request for punitive damages against the City of Leitchfield. [DE 41].

## II. STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When deciding a motion for judgment on the pleadings, the Court applies the same legal standard as it would for a Rule 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

Rule 12(b)(6) states that a court may dismiss a claim when the opposing party demonstrates that the claim "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of such a motion, all well pleaded material allegations of the pleadings of the non-moving party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). However, the Court need not accept as true unsupported legal conclusions or unwarranted factual inferences. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). A complaint that fails to allege a legally cognizable claim or that fails to offer sufficient factual basis to show entitlement to relief "must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As such, a motion for judgment on the pleadings should be granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law. *Winget*, 510 F.3d, at 581-82.

In adjudicating a motion for judgment on the pleadings, the Court may consider not only the plaintiff's complaint but also the defendant's answer and any attachments thereto. *Baker v. Smiscik*, 49 F. Supp. 3d 489 (E.D. Mich. 2014) (citing Fed. R. Civ. P. 12(c)). *See also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("documents attached to the pleadings become part of the pleadings").

## III. DISCUSSION

### A. Motions for Partial Judgment on the Pleadings

This Court previously dismissed Plaintiffs' claims against the individual Leitchfield Defendants in their official capacity, as well as Plaintiffs' Eighth Amendment claims and requests for punitive damages against the City of Leitchfield. [DE 41]. Cockerel, Newton, and Grayson County Defendants now move to dismiss the same claims against them on identical grounds. [*See* DE 44 ("As the same arguments are applicable to Defendants Newton and Cockerel, to the extent official capacity and/or claims under the Eighth Amendment remain against them, Defendants respectfully request the Court dismiss these claims."); DE 46 at 265 ("[T]he Grayson County Defendants respectfully request that the Court dismiss these same claims against them.")]. Additionally, Grayson County Defendants invoke sovereign immunity for the claims against Grayson County, GCSD and Lane, in his official capacity.

#### *1. Official Capacity and Eighth Amendment Claims*

With respect to Defendants Cockerel, Newton, and Lane, Plaintiffs asserts a claim under § 1983, as well as claims for assault and battery, negligence, false arrest and imprisonment, malicious prosecution, abuse of process, professional malfeasance, and professional nonfeasance in both their individual and official capacities. [DE 1 at 9–15 (asserting Counts I–VIII against "all Defendants")]. As with the claims against Jennings and Jupin, movants argue that the official-capacity claims against Defendants Cockerel, Newton, and Lane are "duplicative" of the claims against Leitchfield, Grayson County and the GCSD. [*See, e.g.*, DE 46-1 at 267]. Movants also assert that the complaint's allegations do not implicate Plaintiffs' Eighth Amendment rights. [DE 46-1 at 270]. Plaintiffs have not responded.

Each of these arguments is well-taken. First, a local police department is merely part of the local government, "not an entity which may be sued." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Gomez v. Jefferson Cnty. Police Dep't*, 7 F. Supp. 2d 876, 883 (W.D. Ky. 1996). Second, because official-capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent," where plaintiffs plead both, this Court "dismiss[es] the official capacity claims." *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F. Supp. 3d 532, 541 (W.D. Ky. 2020) (quotation marks omitted). Finally, it is well-established that "the Eighth Amendment right against 'cruel and unusual punishments' . . . kicks in only after a conviction." *Lawler v. Hardeman Cnty., Tennessee*, 93 F.4th 919, 926 (6th Cir. 2024) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).

Accordingly, the motions for partial judgment on the pleadings are **GRANTED** as to the official capacity claims against Defendants Cockerel, Newton, and Lane, as well as the remaining Eighth Amendment claims against all Defendants.

*2. Sovereign and Governmental Immunity*

Next, Grayson County Defendants argue that sovereign immunity bars Plaintiffs' state law tort claims against Grayson County and GCSD.[2] [DE 46-1 at 267–69]. Relevant here, Plaintiffs assert the same state law tort claims against all defendants (Counts II–VII) as well as a claim for negligent hiring, retention, supervision, and training (Count IX) against Grayson County and GCSD. [DE 1 at 9–16].

"When assessing whether defendants are entitled to immunity from state law tort liability, the [federal] court must apply Kentucky rules of sovereign immunity." *B.L. v.*

[2] And Lane (in his official capacity). As discussed herein, however, those claims are dismissed as duplicative of the claims against GCSD.

*Schuhmann*, 380 F. Supp. 3d 614, 656 (W.D. Ky. 2019) (quoting *Ivey v. McCreary Cty. Fiscal Court*, 939 F. Supp. 2d 762,765 (E.D. Ky. 2013)). "Kentucky courts recognize that a county government is cloaked with sovereign immunity." *Lea v. Conrad*, No. 3:19-cv-00419, 2020 WL 6386396, at *2 (W.D. Ky. Oct. 30, 2020) (citation and internal quotation marks omitted). *But cf. Smith v. Buckler*, No. 2:14-cv-51-DLB, 2016 WL 4132198, *3 (E.D. Ky. Aug. 2, 2016) (explaining that "[a]lthough Kentucky counties are 'cloaked with sovereign immunity' from state-law claims, they are exposed to liability under federal law."). Grayson County is therefore immune from suit on Plaintiffs state law tort claims.

Under the common law, a sheriff's office is generally protected from tort liability via governmental immunity. *See Jones v. Cross*, 260 S.W.3d 343, 345 (Ky. 2008). Governmental immunity is "a policy-derived offshoot of sovereign immunity," *Caneyville Volunteer Fire Dept. v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 801 (Ky.2009), that seeks to protect government agencies and entities from liability. *Yanero v. Davis,* 65 S.W.3d 510, 517 (Ky. 2001).

However, the Kentucky General Assembly, via Ky. Rev. Stat. (KRS) § 70.040, waived the sovereign immunity traditionally enjoyed by the office of sheriff, imposing liability on the office for acts committed by the sheriff's deputies in their official capacity. *See Jefferson Cnty. Sheriff's Off. v. Jennings*, No. 2024-CA-0778-MR, 2025 WL 2263782, at *5 (Ky. Ct. App. Aug. 8, 2025); *Adkins v. Fields*, 800 F. Supp. 3d 771, 799 (E.D. Ky. 2025) ("Through this provision, a sheriff's office waives immunity for certain tortious acts or omissions of his deputies."); *Harlan Cnty. v. Browning*, No. 2012-CA-000148-MR, 2013 WL 657880, at *3 (Ky. App. Feb. 22, 2013) (explaining that KRS § 70.040 waives sovereign immunity for both sheriffs and deputies).

Nevertheless, Grayson County Defendants argue that

> GCSD, like all other Sheriff's Offices in the Commonwealth, serves as the law enforcement arm of county government, which is itself a political subdivision of the state entitled to sovereign immunity from suit. Consequently, the GCSD is entitled to the protection of governmental immunity and dismissal of all tort claims against it.

[DE 46-1 at 268–69 (citing *Jones*, 260 S.W.3d at 345). Yet in *Jones*, the case cited by Grayson County Defendants, the Supreme Court of Kentucky held that the common law rule did not apply because "the plain language of KRS 70.040 leaves no room for any other reasonable construction than a waiver of the sheriff's official immunity (the office of sheriff) for the tortious acts or omissions of his deputies." 260 S.W.3d at 346 (Ky. 2008). And the Sixth Circuit has held that "Kentucky law explicitly provides that sheriffs' offices are not immune for acts committed by their deputies." *Ayala v. Hogsten*, 786 F. App'x 590, 592 (6th Cir. 2019). Both cases are controlling.[3]

Here, Lane was a deputy of the Grayson County Sheriff's Office. Grayson County Defendants make no attempt to distinguish this matter from other controlling cases where courts have held KRS § 70.040 waives sovereign immunity for sheriff's offices. Accordingly, GCSD is not entitled to governmental immunity for "the acts or omissions" of Lane in his official capacity. KRS § 70.040.

Grayson County Defendants' motion [DE 46] is **GRANTED** as to the state law tort claims against Grayson County but **DENIED** as to the state law tort claims against GCSD.

---

[3] The Kentucky Supreme Court's construction of Kentucky statutes is binding on federal courts. *Gilbert v. Parke*, 763 F.2d 821, 826 (6th Cir. 1985).

*3. Punitive Damages*

Lastly, Grayson County Defendants argue that Kentucky's Claims Against Local Governments Act ("CALGA"), Ky. Rev. Stat. § 65.200 *et seq.*, bars awards of punitive damages against cities and municipalities, such as Grayson County and GCSD. This Court previously dismissed identical claims for punitive damages against the City of Leitchfield. [DE 41]. "The protections afforded by CALGA allow public employees to diligently and faithfully serve the Commonwealth without worrying about the financial burdens and other adverse consequences of civil litigation, which may stem from their civil service." *Richardson v. Louisville/Jefferson Cnty. Metro Gov't*, 260 S.W.3d 777, 781 (Ky. 2008). The Act provides in relevant part:

> The amount of damages recoverable against a local government for death, personal injury or property damages arising out of a single accident or occurrence, or sequence of accidents or occurrences, shall not exceed the total damages suffered by plaintiff, reduced by the percentage of fault including contributory fault, attributed by the trier of fact to other parties, if any.

Ky. Rev. Stat. § 65.2002. Kentucky courts "have interpreted th[is] statute to generally prohibit recovering punitive damages from a municipality." *Schell v. Young*, 640 S.W.3d 24, 44 (Ky. App. 2021) (citing *Louisville Metro Housing Auth. v. Burns*, 198 S.W.3d 147, 150–51 (Ky. App. 2005)); *see also Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 165 (Ky. 2003).

To the extent Plaintiffs seek an award of punitive damages from Grayson County and GCSD on their state law claims, such claims are barred by CALGA. Additionally, "it is well-settled that a municipality or county government is 'immune from punitive damages under 42 U.S.C. § 1983.'" *Smith v. Shelby Cnty.*, 721 F. Supp. 2d 712, 722 (W.D. Tenn. 2010) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A]

municipality is immune from punitive damages under 42 U.S.C. § 1983.”)). Furthermore, the Court finds that Plaintiffs’ failure to oppose Grayson County Defendants’ motion for partial judgment on the pleadings is equivalent to waiver on this issue. *See Humphrey v. U.S. Att’y Gen.’s Off.*, 279 F. App’x 328, 331 (6th Cir. 2008) (“[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants’ motions to dismiss, the arguments have been waived.”); *Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision) (affirming district court’s grant of defendants’ unopposed motion to dismiss and noting that “if a plaintiff fails to respond or to otherwise oppose a defendant’s motion, then the district court may deem the plaintiff to have waived opposition to the motion.”).

Accordingly, the motions for judgment on the pleadings [DE 44; DE 46] are **GRANTED** as to Plaintiffs’ request for punitive damages.

### B. Joint Motion to Extend Deadlines and Continue Trial Date

As stated in the joint motion, the conclusion of Newton’s criminal trial has significance for the current trial schedule. In addition to the possibility of new discovery regarding Newton, the trial “contains information useful to the remaining parties.” [DE 72 at 514]. Having considered the joint motion, and in light of the open discovery window and dispositive motion deadline with respect to Newton, the Court finds there is good cause for continuing the trial date, converting the October 1, 2026, pretrial conference to a status conference, and resetting the pretrial deadlines. Granting the joint motion is also in the interest of judicial economy because the Court will be able to resolve all summary

judgment motions together.[4] Accordingly, the Joint Motion to Extend Deadlines and Continue Trial Date [DE 72] is **GRANTED**.

The Court notes that certain of the pretrial deadlines "listed in paragraph 6 of the Court's Scheduling Order [DN 26]," have already passed. [DE 72]. Notwithstanding the procedural posture of this case "impact[ing] the Parties' ability to make appropriate and practical pretrial compliances," GCSD, Grayson County, and Lane complied with the existing pretrial deadlines. [*Id.*]. The Court will grant GCSD, Grayson County, and Lane leave to amend their filings following the October 13th, 2026 status resetting the existing pretrial deadlines.

## IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that the motions for partial judgment on the pleadings [DE 44; DE 46] are **GRANTED in part and DENIED in part**:

- All official-capacity claims against Newton, Cockerel, and Lane are **DISMISSED**;
- Plaintiffs' Section 1983 claim, to the extent it relies on the Eighth Amendment's prohibition against cruel and unusual punishment, is **DISMISSED**;
- The state law tort claims against Grayson County are **DISMISSED**; and
- Plaintiffs' request for punitive damages, to the extent it is asserted against Grayson County or GCSD, is **DISMISSED**.

[4] Nothing in this Order shall modify the existing discovery and dispositive motion deadlines for Newton.

**IT IS FURTHER ORDERED** that the motion to extend deadlines and continue trial is **GRANTED**. The pretrial deadlines listed in paragraph 6 of the Court's Scheduling Order [DN 26] and November 9, 2026 trial date are remanded. The October 1, 2026, pretrial conference is **CONVERTED** to a status conference and rescheduled for **October 13, 2026 at 3:30 p.m.** in the Louisville Courthouse. Parties may attend the conference telephonically or in person, at which time unexpired deadlines and discovery will be discussed and pretrial compliance deadlines reset.

Rebecca Grady Jennings, District Judge
United States District Court

September 23, 2026

Copies to Counsel, Jury Clerk-OW.